# United States Bankruptcy Court
## District of Delaware
824 N. Market Street
Wilmington, DE  19801

Chambers of Judge Kevin Gross
(302)252-2913

October 17, 2008

| | |
|---|---|
| Edward J. Kosmowski, Esquire | Katherine L. Mayer, Esquire |
| Young, Conaway, Stargatt & Taylor LLP | McCarter & English, LLP |
| 1000 West Street, 17th Floor | 405 North King Street, 8th Floor |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| | |
| William A. Hazeltine, Esquire | Gregory W. Werkheiser, Esquire |
| Law Offices of William A. Hazeltine LLC | Morris Nichols Arsht & Tunnell LLP |
| The Brandywine Office Building | 1201 North Market Street |
| 1000 North West Street, Ste. 1200 | Wilmington, DE 19801 |
| Wilmington, DE 19801 | |

Re: Distributed Energy Systems Corp., et al. - Case No. 08-11101(KG)

Opinion on Motion for an Order, Pursuant to Sections 105, 363 & 365 of the Bankruptcy Code and Bankruptcy Rule 6006(1) Authorizing the Assumption and Assignment of Certain Executory Contract and (2) Establishing Cure Amounts in Connection Therewith (the "Motion") (D.I. 425)

Dear Counsel:

The Court conducted an evidentiary hearing on the Motion on October 15, 2008 (the "Hearing"), and the Court reserved decision.  Because the matter is time sensitive, the Court is issuing its ruling in letter form to meet the parties' time constraints.

Briefly, by way of background, Distributed Energy Systems Corp. ("DESC"), and its wholly owned subsidiary, NPS Liquidating, Inc., f/k/a Northern Power Systems, Inc. ("NPS", collectively, "Debtors"), filed voluntary petitions under Chapter 11 of the Bankruptcy Code on June 4, 2008.  Thereafter, the Court, by Order, dated July 18, 2008, authorized and approved the

In re Distributed Energy Systems Corp - Case No. 08-11101(KG)
October 17, 2008
page 2

sale of the assets of NPS to CB Wind Acquisition Corp ("CB Wind") free and clear of liens, claims, encumbrances and interests ("the Sale") pursuant to the terms and conditions of the Asset Purchase Agreement, dated July 17, 2008, by and between the Debtors and CB Wind (the "APA").  The Sale Order also authorized the Debtors to assume and assign to CB Wind certain executory contracts and unexpired leases identified in a schedule attached to the APA (the "Schedule").  The Sale closed on August 15, 2008.

The Debtors seek by the Motion authority to assume and assign two agreements, namely: (1) a memorandum of understanding, dated October 6, 2006, between NPS and ePower ("ePower" and the "MOU") and (2) a confidentiality agreement, dated July 1, 2008, between DESC and the Vestas Wind Systems A/S ("Vestas Agreement").

CB Wind purchased all of NPS's assets for $12.9 million plus the assumption of certain liabilities.  As required under the APA, the Debtors identified all contracts to which they were a party and identified those which they were assuming and assigning to CB Wind on the Schedule. The Debtors listed three contracts with ePower, but did not identify the MOU.  The Debtors and CB Wind claim that it was oversight or a "scrivener's error" which caused the omission, and that they intended to include the MOU on the Schedule.  Likewise, although a number of confidentiality agreements were assumed, the Debtors did not list the Vestas Agreement on the Schedule.

The Objections to the Motion

ePower and Vestas have objected to the Motion as to their respective agreements with Debtors.  It is clear that the motivation behind the objection of ePower to the assumption and assignment of the MOU is that ePower and Vestas have arrived at a definitive but not yet

In re Distributed Energy Systems Corp - Case No. 08-11101(KG)
October 17, 2008
page 3

executed agreement for projects like those outlined in the MOU. First, ePower argues that Debtors failed to prove that there is adequate assurance of future performance by CB Wind, that CB Wind lacks the intent or the ability to perform under the terms of the MOU. Second, ePower insists that the MOU is not an executory contract. Third, ePower claims that the Debtors abandoned and rejected the MOU when Debtors did not include the MOU in the Schedule. Fourth, ePower complains that it engaged in negotiations with Vestas because it believed that the Debtors had rejected the MOU and the real purpose of the Motion is to interfere with ePower's negotiations with Vestas. The Court does not agree.

The Vestas Agreement at issue is a confidentiality agreement which Vestas argues the Debtors cannot assume and assign because it is not an executory contract. As the Court will explain below, the Vestas argument is well-founded and the Court will sustain Vestas's objection.

## Discussion

The Motion is, of course, governed by Section 365 of the Bankruptcy Code which provides for the assumption or rejection of executory contracts. The primary issue is, therefore, whether the agreements at issue constitute executory contracts. Section 365(a) authorizes a debtor to assume an executory contract even if a default exists provided the debtor cures the default. Sections 365(b). The Court must apply the business judgment rule to determine whether a debtor's decision to assume an executory contract is appropriate. *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, (*In re Sharon Steel Corp.*), 872 F.2d 36, 40 (3d Cir. 1989). The Court must give great deference to a debtor's decision. *Sharon Steel Corp.*, 872 F.2d at 40. The Court is satisfied on the basis of the evidentiary record that the MOU is an

In re Distributed Energy Systems Corp - Case No. 08-11101(KG)
October 17, 2008
page 4

executory contract and, further, that the Debtors have properly exercised their business judgment in deciding to assume and assign it. An executory contract is one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *In re Columbia Gas System*, 50 F.3d 233, 239 (3d Cir. 1995). The terms of the MOU establish that both the Debtors and ePower have outstanding obligations to each other. The MOU (PX 3) has by its terms not terminated. See MOU at ¶ 9. The MOU contains express terms for ongoing exclusive collaboration to pursue "commercial opportunities to develop wind and water-powered permanent magnet generator systems. . .." MOU at ¶ 1. It further provides that Debtors "will be responsible for the primary, direct interface with external funding agencies and customers for all activities governed by this MOU. . .." MOU at ¶ 3. The foregoing are a few examples of the ongoing nature of the contractual relationship between Debtors and ePower. The MOU is replete with obligations that one, the other or both parties "will," or "shall" perform. It is not me merely an "agreement to agree" as ePower contends it is. The Court is fully satisfied that the MOU is an executory contract. Although a considerable amount of testimony at the Hearing addressed the Debtors' intent to reject and/or abandon of the MOU, the intent issue is irrelevant as the fact remains that the Debtors did not seek and the Court did not approve a rejection of the MOU and the Debtors have an on-going right to assume contracts through confirmation. The Court is also persuaded that CB Wind has provided proof, i.e., adequate assurance, of its ability to perform its obligations under the MOU. The Court previously approved in the Sale Order the assignment to CB Wind of numerous executory contracts without any counter party' concern for CB Wind's ability to perform. Although the

In re Distributed Energy Systems Corp - Case No. 08-11101(KG)
October 17, 2008
page 5

absence of objections is not proof positive of adequate assurance, it is noteworthy. What is persuasive and affirmative proof is that the MOU does not require Debtors, and hereafter CB Wind, to expend funds. Instead, the MOU contemplates that the parties will seek funding through agencies and customers. MOU at ¶ 3. Accordingly, the Court finds that the Debtors have satisfied the requirement of Section 365 for the assumption and assignment of the MOU.

Debtors also established why the relief they seek represents the appropriate exercise of business judgment. The Motion is an extension of the Sale which the Court previously found was a proper application of Debtors' business judgment. In addition, CB Wind made numerous concessions and provided ample consideration to Debtors in exchange for the assumption and assignment of the MOU. Among the benefits to Debtors are CB Wind's payment of fees and expenses, reduction of the holdback from the Sale, and CB Wind's release of any claims it may have against Debtors for matters relating to the Motion. See Stipulation Regarding Certain Executory Contracts (D.I. 461). Clearly, Debtors are receiving such adequate, if not generous, consideration to justify the Motion as well within the broad range of proper business judgment.

In contrast to the MOU, the Court is fully satisfied that the Vestas Agreement is not an executory contract and therefore the Debtors are unable to assume and assign it. By its terms, Vestas remains obligated to maintain the confidentiality of information it has received from the Debtors. However, the Debtors do not have any remaining obligations to perform and, therefore, the agreement is not executory. This does not, of course, mean that Vestas is now free to disregard its undertakings, but the Court does not have the authority to approve the assumption and assignment of the Vestas Agreement.

In re Distributed Energy Systems Corp - Case No. 08-11101(KG)
October 17, 2008
page 6

      Lastly, Debtors have requested pursuant to Bankruptcy Rule 6006(d) that the Court waive the ten-day stay period of its approval of the MOU.  The Court is unwilling to do so.  The Debtors filed the Motion approximately ten weeks after the Sale Order and have not established good cause why the customary ten-day stay should not remain in effect.  The delay in seeking relief, even if inadvertent, belies any claim of prejudice from the mandated stay and Debtors did not present evidence of, or argument for, cause to excuse the stay.

      The Court will issue an Order consistent with the rulings contained herein.

      Very truly yours,

*/s/ Kevin Gross*
KEVIN GROSS, U.S.B.J.