# CREDITOR TRUST AGREEMENT

THIS CREDITOR TRUST AGREEMENT (this "Agreement") is entered into this 22 day of Sept. 2010, by and among (1) the Official Committee of Unsecured Creditors (the "Committee") of Distributed Energy Systems Corp. and NPS Liquidating, Inc. (the "Debtors") [1] and (2) Clifford Zucker of J.H. Cohn LLP in his capacity as the creditor trustee of the Creditor Trust (the "Creditor Trustee").

## WITNESSETH:

WHEREAS, on June 4, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"), Case No. 08-111101 (KG) (the "Case");

WHEREAS, on July 15, 2010, the Committee and the Debtors filed a Joint Motion of the Debtors and Official Committee of Unsecured Creditors for an Order Authorizing Mechanism for Distribution of Settlement Funds, Structured Dismissal and Related Relief Pursuant to 11 U.S.C. § § 105(a), 349 and 112(b) (the "Structured Dismissal Motion"), which, among other things, provides for the creation of the Creditor Trust (as defined herein);

WHEREAS, on _____, the Court granted the Structured Dismissal Motion and entered an order (the "Structured Dismissal Order"), which authorizes, among other things, the establishment of a creditor trust (the "Creditor Trust" or the "Distributed Creditor Trust") for the benefit of the General Unsecured Creditors (as defined herein), the transfer of the Trust Assets (as defined herein) to the Creditor Trust, and the appointment of the Creditor Trustee as the trustee and manager of the Creditor Trust;

WHEREAS, the Creditor Trust holds or will hold certain Trust Assets for the benefit of the General Unsecured Creditors as provided in the Order and is established for the sole purpose of liquidating its assets and resolving creditor claims for the benefit of the General Unsecured Creditors, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective or authority to continue or engage in the conduct of a trade or business;

WHEREAS, the Creditor Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) that is treated as "grantor trust" for federal income tax purposes; and

WHEREAS, Clifford Zucker of J.H. Cohn LLP is appointed the Creditor Trustee, and Mr. Zucker is willing to accept such appointment and to perform the duties of the Creditor Trustee pursuant to the terms of this Agreement and upon such terms and conditions as are hereinafter set forth.

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Distributed Energy Systems Corp. ("DESC") (7690) and NPS Liquidating, Inc., f/k/a Northern Power Systems, Inc. ("NPS") (1302). The mailing address for each of the Debtors is 10 Technology Drive, Wallingford, CT 06492.

NOW, THEREFOR, for and in consideration of the promises and mutual covenants herein contained, pursuant to the Order and this Agreement, the parties do hereby covenant and agree as follows:

## ARTICLE 1

## DEFINITIONS; INTERPRETIVE RULES.

1.1     Terms.  For purposes of this Agreement all capitalized terms shall have the meanings ascribed to them herein, and the following terms shall have the following meanings:

1.1.1   "Allowed" shall mean, with respect to a Claim, such Claim or any portion thereof (i) that has been allowed, or adjudicated in favor of the Holder by estimation or liquidation, by a Final Order, or (ii) as to which (x) no Proof of Claim has been filed with the Court and (y) the liquidated, undisputed and noncontingent amount of which is included in the Schedules, excluding a Claim that is included in the Schedules at zero, in an unknown amount, or as Contested Claim, or (iii) for which a Proof of Claim in a liquidated amount has been timely filed with the Court pursuant to the Bankruptcy Code, any Final Order of the Court, or other applicable bankruptcy law, and as to which either (x) no objection to its allowance has been filed within any prescribed periods of limitation fixed by the Bankruptcy Code or any order of the Court, or (y) any objection to its allowance has been settled or withdrawn, or has been overruled by a Final Order. Notwithstanding the foregoing, no Claim shall be deemed Allowed until the Creditor Trustee shall have had an opportunity to interpose an objection thereto with the Court during the Objection Period. In no event shall any Claim subject to disallowance under Section 502(d) of the Bankruptcy Code be deemed to be an Allowed Claim.

1.1.2   "Bankruptcy Estate" shall mean the bankruptcy estate of the Debtors created or constituted under the provisions of the Bankruptcy Code and applicable law.

1.1.3   "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, as the same may be amended from time to time.

1.1.4   "Beneficiaries" shall mean those General Unsecured Creditors that hold Allowed Claims as of Structured Dismissal Date, and who have an undivided beneficial interest in the right to receive a pro-rata Distribution of assets of the Creditor Trust.

1.1.5   "Business Day" shall mean any day except Saturday, Sunday, or any legal holiday expressly set forth in Bankruptcy Rule 9006(a).

1.1.6   "Causes of Action" shall mean any and all actions, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, that have been or could have been brought by or on behalf of the Bankruptcy Estate, the General Unsecured Creditors or the Creditor Trust, whether known or unknown, in law, equity or otherwise, with respect to Claim or General Unsecured Creditor.

1.1.7   "CB Wind Adversary Proceeding" shall mean the proceeding entitled *Official Committee of Unsecured Creditors, on behalf of Distributed Energy Systems Corp., et*

*al., v. CB Wind Acquisition Corp. (n/k/a Northern Power Systems, Inc.)*, commenced by the Committee under Adversary Proceeding No. 10-51229 (KG).

1.1.8    "Claim" or "Claims" shall mean any and all unsecured claims.

1.1.9    "Claims Agent" shall mean Epiq Systems.

1.1.10    "Contested Claim" shall mean any Claim or portion thereof as to which the Debtors, the Creditor Trustee, or any other party in interest entitled to do so under applicable law has filed an objection or request for estimation, which objection or request for estimation has not been determined by a Final Order in accordance with the Bankruptcy Rules and this Agreement or specific orders of Court. For the avoidance of doubt, all Claims shall be Contested Claims until the expiration of the Objection Period, unless such Claim has been Allowed.

1.1.11    "Court" shall mean the United States Bankruptcy Court for the District of Delaware.

1.1.12    "Distribution Date" shall mean any date on which the Creditor Trustee makes a Distribution pursuant to this Agreement; provided such date shall not be later than the first Business Day after the first anniversary of the Structured Dismissal Date.

1.1.13    "Distribution" shall mean the disbursement of cash from the Trust Assets to the Beneficiaries.

1.1.14    "Effective Date" shall mean the date on which the Structured Dismissal Order becomes a Final Order.

1.1.15    "Final Order" shall mean an order or judgment of the Court, or a court of competent jurisdiction, as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, which may be filed with respect to such order shall not cause such order not to be a Final Order.

1.1.16    "General Unsecured Creditors" shall mean the general unsecured creditors of the Debtors.

1.1.17    "Holder" shall mean the holder of a Claim.

1.1.18    "Initial Distribution Date" shall mean the first Distribution Date.

1.1.19    "Professionals" shall mean those persons that shall be retained and selected by the Creditor Trustee, in its sole discretion, to assist the Creditor Trustee in its administration of the Creditor Trust, or as applicable to assist the Committee.

1.1.20 "Proof of Claim" shall mean a proof of claim as referenced in Bankruptcy Rule 3001 filed with the Court in connection with the Chapter 11 Case.

1.1.21 "Schedules" shall mean the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, the list of holders of interests and the statements of financial affairs filed by the Debtors under Section 521 of the Bankruptcy Code and Bankruptcy Rules 1007 and 1009, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

1.1.22 "Structured Dismissal Order" shall mean the Order Granting Joint Motion of the Debtors and Official Committee of Unsecured Creditors for an Order Authorizing Mechanism for Distribution of Settlement Funds, Structured Dismissal, and Related Relief Pursuant to 11 U.S.C. §§ 105(a), 349 and 1112(b).

1.1.23 "Structured Dismissal Date" shall mean the date of the final resolution, settlement or adjudication of the CB Wind Adversary Proceeding.

1.1.24 "Trust Assets" shall mean the initial amount of $250,000 (the "Initial Funds") as received for distribution to General Unsecured Creditors through that certain Compromise and Settlement Agreement entered into between the Committee, the Debtors and Perseus Partners VII, L.P. on April 1, 2009. In addition to the Initial Funds, the Committee may pursue certain litigation on behalf of the Debtors' estate and depending on the outcome of such litigation, additional funds may be obtained (the "Additional Funds" and together with the Initial Funds, collectively referred to as the "Trust Assets").

1.2     Interpretive Rules.  For purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires: (i) references to "Articles", "Sections", and other subdivisions, without reference to a particular document, are to be designated Articles, Sections, and other subdivisions of this Agreement; (ii) the use of the term "including" means "including but not limited to"; and (iii) the words "herein", "hereof", "hereunder", and other words of similar import refer to this Agreement as a whole and not to any particular provision (unless otherwise specified).  The enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement.  The singular shall include the plural and the plural the singular, when the context so requires, and the feminine, the masculine, and the neuter genders shall be mutually inclusive.

## ARTICLE 2

## CREATION OF THE CREDITOR TRUST, APPOINTMENT OF CREDITOR TRUSTEE

2.1     Establishment of the Creditor Trust.  Pursuant to the Order, the parties hereby establish the Creditor Trust.  Clifford Zucker of J.H. Cohn LLP is hereby appointed Creditor Trustee and Mr. Zucker hereby accepts such appointment, to hold, administer and distribute the Trust Assets all on the terms and conditions as set forth in this Agreement.  The Trust Assets are hereby absolutely and irrevocably transferred, conveyed, assigned and set over to the Creditor Trust free and clear of claims, liens and interests, to be managed by the Creditor Trustee in

accordance with the terms of this Agreement for the sole purpose of consummating and carrying out the terms of the Order. This Agreement and the Creditor Trust created hereunder are hereby declared to be irrevocable and the Debtors and the Committee shall not have any right at any time to withdraw any of the property held hereunder or to revoke, annul, or cancel the Creditor Trust created hereunder in whole or in part, or to alter, amend, or modify this Agreement in any respect without a further order of the Court.

    2.2   <u>Trust Name</u>. The trust created hereby shall be known as the Distributed Creditor Trust, in which name the Creditor Trustee may, among other things, conduct the business of the Creditor Trust, make and execute contracts on behalf of the Creditor Trust, sue and be sued on behalf of the Creditor Trust, and take such other actions as the Creditor Trustee is authorized hereunder to take.

## ARTICLE 3

## PURPOSE, ADMINISTRATION

    3.1   <u>Purpose of the Creditor Trust</u>. The Creditor Trust shall be established for the sole purpose of liquidating and distributing and resolving the claims to the Trust Assets, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Creditor Trustee shall, in an orderly manner, liquidate the Trust Assets of the Creditor Trust, make timely Distributions and not unduly prolong the duration of the Creditor Trust.

    3.2   <u>Purpose of Agreement</u>. The parties hereby enter into this Agreement for the purposes of establishing the Creditor Trust contemplated by the Order and authorizing the Creditor Trustee to, among other things: (i) make the Distributions of the Trust Assets to Beneficiaries; (ii) seek estimation of contingent or unliquidated Claims under Bankruptcy Code §502(c); (iii) invest the Trust Assets; (v) hire and retain attorneys, Professionals and other advisors; and (vii) pay all reasonable fees and expenses incurred by the Creditor Trustee (including the reasonable fees and expenses of attorneys, Professionals and other advisors) from the Creditor Trust. All activities of the Creditor Trustee shall be reasonably necessary to, and consistent with, the accomplishment of these purposes; all of such purposes benefit the Creditor Trust. Nothing contained herein shall be deemed to limit the authority of the Creditor Trustee.

    3.2.1   <u>Administration of the Creditor Trust Assets</u>. From and after the Effective Date, the Creditor Trustee shall take all steps necessary to liquidate all Trust Assets and distribute the proceeds in accordance with this Agreement, all as it deems to be reasonable and in the best interests of the Beneficiaries.

    3.3   <u>Tax Treatment of Creditor Trust</u>. For United States federal and applicable state income tax purposes, the transfer of the Trust Assets to the Creditor Trust pursuant to and in accordance with the Order shall be treated as a disposition of such assets directly to and for the benefit of the Beneficiaries. The Beneficiaries will be treated as the grantors and owners of the Creditor Trust. All earnings of the Creditor Trust shall be currently taxable to the Beneficiaries in the year in which such earnings are realized. The Creditor Trust is intended to qualify as a liquidating trust that is treated as a "grantor trust" for federal income tax purposes, and the

Creditor Trustee shall use its best efforts to operate and maintain the Creditor Trust in compliance with Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Sections 1.671-4(a) and 301.7701-4(d) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service.

3.4    Incorporation of Order.  The Order is hereby incorporated into this Agreement and made a part hereof by this reference.

## ARTICLE 4

## DUTIES, RIGHTS AND POWERS OF CREDITOR TRUSTEE

4.1    Status of Creditor Trustee.  This Agreement shall not limit or modify the right of the Creditor Trustee to commence or prosecute any Cause of Action.  The Creditor Trustee shall be a party-in-interest as to all matters over which the Court has jurisdiction and shall be the only party to have standing to file, prosecute, settle or compromise any Cause of Action.

4.2    Duties of Creditor Trustee. The Creditor Trustee shall have the right and duty to liquidate the Trust Assets, engage in any Claim Reconciliation, file, prosecute, litigate, compromise, settle and abandon, any Cause of Action assigned and delivered to the Creditor Trust, collect the income and make Distributions to the Beneficiaries from the Creditor Trust, as provided hereunder.

4.3    Standard of Care.  The Creditor Trustee shall exercise its rights and powers vested in it by this Agreement and use reasonable business judgment in its exercise.  Subject to applicable law, the Creditor Trustee shall not be liable to the Creditor Trust or any Beneficiary for any act it may do or omit to do as a Creditor Trustee while acting in good faith and in the exercise of its reasonable business judgment.  The foregoing limitation on liability will apply equally to the Professionals, agents, attorneys, and/or employees of the Creditor Trustee acting on behalf of the Creditor Trustee in the fulfillment of the Creditor Trustee's duties hereunder.

4.4    Bond.  The Creditor Trustee shall not be required to post a bond.

4.5    Creditor Trustee's Rights and Powers.  The Creditor Trustee shall act on behalf of the Creditor Trust.  The Creditor Trustee shall have all the powers and authority set forth herein necessary to effect the disposition, orderly liquidation, and/or Distribution of the Trust Assets.  As of the Effective Date, the rights and powers of the Creditor Trustee shall include, subject to the limitations set forth in this Agreement, the right and power, without further Court approval, to:

*(a)*    Make Distributions to the Beneficiaries hereunder;

*(b)*    Reconcile, settle and resolve Claims of any Beneficiary;

*(c)*    Seek an estimation of contingent or unliquidated Claims of any Beneficiary under Bankruptcy Code § 502(c);

*(d)*    Invest the Trust Assets;

(e)      Pay and satisfy Allowed Claims and trust expenses from the Trust Assets;

(f)      Enforce and carry out the terms of the Order and this Agreement;

(g)      Obtain and maintain such space, facilities, equipment, supplies and personnel as shall be reasonably necessary for the performance of the Creditor Trustee's duties hereunder;

(h)      Pay all expenses and obligations of the Creditor Trust, including Professional fees, from the Trust Assets;

(i)      Consult with counsel or special counsel retained by the Creditor Trustee, and employ other individuals in connection with the administration of the liquidation and Distribution of Trust Assets, and pay all reasonable and necessary costs of any litigation directly or indirectly involving the Creditor Trust or the Trust Assets;

(j)      Select and employ, and determine compensation for, Professionals, including, but not limited to, brokers, consultants, custodians, investment advisors, asset services, auditors, accountants, and other agents as the Creditor Trustee deems necessary to assist it in carrying out its duties, with the reasonable fees and expenses (as determined by the Creditor Trustee) of such Professionals to be paid by the Creditor Trust;

(k)      If after all Distributions have been made, a de minimis balance (as determined by the Creditor Trustee) of Trust Assets remains in the Trust Account, the Creditor Trustee may donate such balance to a charitable organization exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code that is unrelated to any of the Debtors, the Creditor Trust, and the Creditor Trustee;

(l)      Hold legal title to any and all rights of the Beneficiaries in or arising from the Creditor Trust or Trust Assets;

(m)      Execute and file any and all documents, regulatory filings and transfer applications and take any and all other actions related to, or in connection with, the liquidation of the Creditor Trust, the exercise of the Creditor Trustee's powers granted herein and the enforcement of any and all instruments, contracts, agreements or causes of action relating to the Creditor Trust or the Trust Assets;

(n)      Open and maintain bank accounts (including at Wilmington Trust Company) and deposit funds, draw checks and make disbursements in accordance with this Agreement;

(o)      File, if necessary, any and all tax and information returns with respect to the Creditor Trust treating the Creditor Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations and pay taxes properly payable by the Creditor Trust, if any, and make Distributions to Beneficiaries net of any such taxes;

(p)     In the event the Creditor Trustee determines that any of the Beneficiaries or the Creditor Trust may, will or has become subject to adverse tax consequences, take such actions that in its reasonable discretion will, or are intended to, alleviate such adverse tax consequences, such as dividing the Trust Assets into several trusts or other structures;

(q)     withhold from the amount distributable to any person such amount as may be sufficient to pay a tax or other charge which the Creditor Trustee has determined, in its reasonable discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of its discretion and judgment, the Creditor Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions hereof;

(r)     Seek any relief from or resolution of any disputes;

(s)     Appear and participate in any proceeding with respect to any matter regarding or relating to this Agreement, the Order, the Claims or the Creditor Trust; and

(t)     Otherwise take such other actions as shall be necessary to implement the Order, the terms of this Agreement, or to carry out its obligations and to exercise its rights in accordance with and subject to the Order and shall perform all of the duties, responsibilities and obligations as set forth in this Agreement.

     4.6     Limitations on Creditor Trustee's Liabilities. Neither the Creditor Trustee nor any Professional retained by the Creditor Trustee shall be responsible, or shall have any liability whatsoever to any person for any loss or liability the General Unsecured Creditors, the Debtors or the Bankruptcy Estate may sustain or incur, except as otherwise provided in Section 4.10 of this Agreement.

     4.7     Selection of Agents. The Creditor Trustee may select and employ, and determine compensation for, Professionals, including, but not limited to, brokers, consultants, custodians, investment advisors, asset services, auditors, accountants, and other agents as the Creditor Trustee deems necessary to assist it in carrying out its duties, with the reasonable fees and expenses of such Professionals to be paid by the Creditor Trust. The Creditor Trustee may engage any Professionals that are engaged (or that were previously engaged) by the Committee to represent the Committee, and such engagement by the Creditor Trustee shall not be a conflict. Subject to Section 4.16 of this Agreement, the Creditor Trustee may pay the salaries, fees, and expenses of such persons or firms out of the Trust Assets.

     4.8     Signature. As of the Effective Date, the Creditor Trustee shall have the signature power and authority on behalf of the Creditor Trust to (i) open and close accounts with any banking, financial or investment institution; (ii) make deposits and withdrawals of cash and other property into or from any such account; (iii) make or endorse checks with respect to any such account; and (iv) effectuate purchases and sales of securities and give security purchase and sale orders to brokers or any other third parties, and the exercise of such power and authority shall be deemed to be authorized by and to represent the decision of the Creditor Trustee then entitled to make such decision.

4.9     Maintenance of Register. The Creditor Trustee shall at all times maintain or cause to be maintained a register of the names, addresses, and amount of the Claims of each of the Beneficiaries.

4.10     Liability of Creditor Trustee.

4.10.1  Liability; Indemnification.

(a)     The Creditor Trustee and its Professionals and agents shall not in any way be liable for any acts or omissions to act except by reason of their gross negligence, bad faith or willful misconduct in the performance of their duties under the Order or this Agreement. The Creditor Trust shall indemnify the Creditor Trustee and the Professionals and agents and hold them harmless from and against any and all liabilities, expenses, claims, damages and losses incurred by them as a direct result of actions taken or omissions to act by them in such capacity or otherwise related to this Agreement or the Creditor Trust. The Creditor Trust shall indemnify and hold harmless any person who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was the Creditor Trustee or the Professionals or agents, against all costs, expenses, judgments, fines and amounts paid in settlement actually and reasonably incurred by such entity in connection with such action, suit or proceeding, or the defense or settlement of any claim, issue or matter therein, to the fullest extent permitted by applicable law, except in the case of the Creditor Trustee, if such costs and expenses, judgments, fines or amounts paid in settlement are found in a final, nonappealable judgment by a court of competent jurisdiction to have resulted from the Creditor Trustee's or its agents or Professionals' gross negligence, bad faith, or willful misconduct.

(b)     Costs or expenses incurred by any person entitled to the benefit of the provisions of this Section 4.10 in defending any such action, suit or proceeding may be paid by the Creditor Trust in advance of the institution or final disposition of such action, suit or proceeding, if authorized by the Creditor Trustee, subject to providing an undertaking to repay all such advanced amounts if it is subsequently determined that such person is not entitled to indemnification under this Section 4.10. Any dispute regarding such indemnification of the Creditor Trustee shall be resolved by the Court which has jurisdiction over matters relating to the indemnification provided under this Section 4.10.

(c)     The Creditor Trustee may in its discretion purchase and maintain insurance on behalf of any person who is or was a beneficiary of this provision.

(d)     Promptly after receipt by an indemnified party or parties (the "Indemnified Party") of notice of any claim, or notice of commencement of any action, suit or proceeding by a person other than the Creditor Trustee, in respect of which the Indemnified Party may seek indemnification from the Creditor Trust pursuant to this Section 4.10, the Indemnified Party, if not the Creditor Trustee, shall notify the Creditor Trustee of such claim, action, suit or proceeding and shall thereafter promptly convey all further communications and information in respect thereof to the Creditor Trustee.

(e)     The Creditor Trustee shall, if it so elects, have sole control at the expense of the Creditor Trust over the contest, settlement, adjustment or compromise of any claim, action, suit or proceeding in respect of which this Section 4.10 requires that the Creditor Trust indemnify the Indemnified Party.

(f)     The Indemnified Party shall cooperate with the reasonable requests of the Creditor Trustee in connection with such contest, settlement, adjustment or compromises, provided that (i) the Indemnified Party may, if it so elects, employ counsel at its own expense to assist in (but not control) the handling of such claim, action, suit or proceeding, (ii) the Creditor Trustee shall obtain the prior written approval of the Indemnified Party before entering into any settlement, adjustment or compromise of such claim, action, suit or proceeding, or ceasing to defend against such claim, action, suit or proceeding, if pursuant thereto or as a result thereof injunction or other relief would be imposed upon the Indemnified Party, and (iii) the Indemnified Party shall obtain the prior written approval of the Creditor Trustee, or, if the Creditor Trustee is the Indemnified Party, the prior written approval of the Court, before entering into any settlement, adjustment or compromise of such claim, action, suit or proceeding, or ceasing to defend against such claim, action, suit or proceeding, and no such settlement, adjustment or compromise shall be binding on the Creditor Trust without such approval.

4.10.2  No Liability for Acts of Predecessor.  No successor Creditor Trustee shall be in any way responsible for the acts or omissions of any Creditor Trustee in office prior to the date on which such person becomes a Creditor Trustee, nor shall it be obligated to inquire into the validity or propriety of any such act or omission, unless such successor Creditor Trustee expressly assumes such responsibility.  Any successor Creditor Trustee shall be entitled to accept as conclusive any final accounting and statement of the Trust Assets furnished to such successor Creditor Trustee by such predecessor Creditor Trustee and shall further be responsible only for those Trust Assets included in such statement.

4.10.3  No Implied Obligations.  The Creditor Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no other or further covenants or obligations shall be implied into this Agreement.  The Creditor Trustee shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties herein or in any documents or instrument evidencing or otherwise constituting a part of the Trust Assets.  The Creditor Trustee makes no representations as to the value of the Trust Assets or any part thereof, nor as to the validity, execution, enforceability, legality, or sufficiency of this Agreement; and the Creditor Trustee shall incur no liability or responsibility with respect to any such matters.

4.10.4  Reliance by Creditor Trustee on Documents or Advice of Counsel or Other Persons.  Except as otherwise provided herein, the Creditor Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, and other paper or document reasonably believed to be genuine and to have been signed or presented by the proper party or parties, and shall have no liability or responsibility with respect to the form, execution, or validity thereof.  None of the provisions hereof shall require the Creditor Trustee to expend or risk its own funds or otherwise incur financial liability or expense in the performance of any duties hereunder.

**4.10.5** No Personal Obligation for Debtors' Liabilities. Holders and other persons dealing with the Creditor Trustee in its capacity as Creditor Trustee within the scope of this Agreement, shall look solely to the Trust Assets to satisfy any liability incurred by the Creditor Trustee to such person in carrying out the terms of this Agreement, and the Creditor Trustee shall have no personal or individual obligation to satisfy any such liability.

**4.11** Establishment of Trust Accounts. The Creditor Trustee may establish or cause to be established and maintained any accounts needed in connection with the purposes of the Creditor Trust (the "Trust Accounts"). Such accounts shall be maintained only at Wilmington Trust Company or other FDIC insured financial institutions including, and shall bear a designation clearly indicating that the funds deposited therein are held for the benefit of the Creditor Trust.

**4.12** Investment of Cash. Cash in the Trust Accounts and any other amounts contemplated by this Agreement shall be maintained in United States dollars or shall be invested by the Creditor Trustee in (i) direct obligations of, or obligations guaranteed by, the United States of America, (ii) obligations of any agency or corporation that is or may hereafter be created by or pursuant to an act of Congress of the United States of America as an agency or instrumentality thereof, or (iii) such other obligations or instruments as may from time to time be permitted under section 345 of the Bankruptcy Code; provided that the Creditor Trustee may, to the extent necessary to implement the provisions of the Order and this Agreement, deposit moneys in demand deposits, time accounts or checking accounts at Wilmington Trust Company or at any banking institution or trust company having combined capital stock and surplus in excess of $100,000,000 based upon its most recently available audited financial statements, regardless of whether such investments and deposits are insured or as otherwise provided in Section 4.11 above. Such investments shall mature in such amounts and at such times as the Creditor Trustee, in its discretion, shall deem appropriate to provide funds when needed to transfer funds in accordance with this Agreement, make payments to the Trust Accounts or make Distributions in accordance with this Agreement. The Creditor Trust may not retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Trust Assets in liquidation or maintain or fund an adequate and sufficient reserve.

**4.13** Tax Returns. From and after the Effective Date, to the extent required, the Creditor Trustee shall be responsible for the filing of any and all federal and state tax returns or other filings as required by law to be filed on behalf of the Creditor Trust. Such returns shall be consistent with the treatment of the Creditor Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations.

**4.14** Compensation for Creditor Trustee. The Creditor Trustee shall be paid from the Trust Assets, pursuant to Section 4.16 and related provisions of this Agreement, without need for application to the Court.

**4.15** Reimbursements. The Creditor Trustee and any agents or consultants employed pursuant to this Agreement shall be reimbursed from the Trust Assets for all reasonable out-of-pocket expenses incurred in the performance of its duties hereunder in addition to any compensation received pursuant to Section 4.16 and related provisions of this Agreement.

4.16   <u>Payment of the Creditor Trustee's and Professionals' Fees and Expenses</u>.  The Creditor Trustee shall pay from the Trust Assets all reasonable fees and expenses incurred in connection with the duties and actions of the Creditor Trustee, including, but not limited to, fees and expenses of any Professionals, agents or servants retained under this Agreement and fees and expenses to pay insurance, taxes and other expenses arising in the ordinary course of business in maintaining, liquidating, disposing of and the Distribution of the Trust Assets and compensation to the Creditor Trustee.  The Creditor Trustee may pay all such reasonable fees and expenses without application to or approval of the Court.  Any disputes concerning the payment of the foregoing fees and expenses may be brought before the Court for resolution.

## ARTICLE 5

## BENEFICIARY

5.1   <u>Identification of Beneficiaries</u>.  The Creditor Trust is created for the benefit of the General Unsecured Creditors who are Beneficiaries.  The Beneficiaries shall each have an undivided beneficial interest in the right to receive a pro-rata Distribution of assets of the Creditor Trust ("<u>Beneficial Interest</u>").  The Beneficiaries are Holders of Allowed Claims against the Debtors as of the Structured Dismissal Date.  The Beneficiaries of the Creditor Trust shall be based on the list of claims register as maintained by Epiq Systems as claims agent and the Schedules (other than those Claims that are not Allowed Claims).  If such Claims are not Allowed Claims, such Beneficiary shall not be considered a Beneficiary hereunder.

5.2   <u>Rights of Beneficiaries</u>.  Each Beneficiary shall take and hold its Beneficial Interest subject to all of the terms and provisions of this Agreement.  The Beneficial Interests shall not be certificated and shall not be transferable, assignable, pledged or hypothecated in whole or in part.  Any such transfer shall not be effective.  No Beneficiary shall have legal title to any part of the Trust Assets.  The interest of a Beneficiary of the Creditor Trust is in all respects personal property, and upon the death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's Beneficial Interest shall pass to the legal representative of such Beneficiary.  A Beneficiary shall have no title to, or any right to possess, manage or control, the Trust Assets, or any portion thereof or interest therein.  No surviving spouse, heir or devisee of any deceased Beneficiary shall have any right of dower, homestead or inheritance, or of partition, or any other right, statutory or otherwise, in the Trust Assets, but the whole title to all the Trust Assets shall be vested in the Creditor Trustee and the sole interest of the Beneficiaries shall be the rights and benefits provided to such persons under this Agreement.

## ARTICLE 6

## DISTRIBUTIONS

6.1   <u>Distributions</u>.  After the Effective Date, at such time(s) as the Creditor Trustee shall deem advisable in its sole and absolute discretion, the Creditor Trustee shall make Distributions from the Creditor Trust, on a pro rata basis, to those Beneficiaries that are Holders of Allowed Claims as determined by the Creditor Trustee, and in such amounts as determined by the Creditor Trustee.  Subject to the preceding sentence the Creditor Trustee shall make subsequent Distributions under this Agreement at such times and in such amounts as required

thereby and shall make such additional Distributions as the Creditor Trustee shall in its discretion deem appropriate in accordance with this Agreement. Except as otherwise set forth herein, the Creditor Trustee may, but shall not be required to, set-off against any Claim and the Distributions to be made in respect of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Creditor Trustee of such set-off or recoupment which the Creditor Trustee may have against such Holder. Any disputes concerning the administration of the Creditor Trust or the implementation of the Distributions of the Trust Assets as provided herein shall be brought before the Court for resolution.

      6.2    [intentionally omitted]

      6.3    <u>De Minimis Distributions</u>. Notwithstanding any other provision of this Agreement, the Creditor Trustee shall have no obligation to make a Distribution on account of an Allowed Claim to a specific Beneficiary if the amount to be distributed to that Beneficiary (i) does not constitute a final Distribution to such Holder and (ii) is less than $50.00. Any undistributed amount shall be held over to the next subsequent Distribution date and, if the amount to be distributed to the Beneficiary would never exceed $25.00, such Beneficiary shall be excluded from receiving a Distribution. In addition, the Creditor Trustee reserves the right to request subsequent relief from the Court to exclude Beneficiaries from the final Distribution under this Agreement to the extent that the amounts otherwise distributable to such Holders or Beneficiaries in connection with such final Distribution would be de minimis or create undue administrative expense. In addition, in the event that after all Distributions have been made a de minimis balance of Trust Assets remains in the Trust Account, the Creditor Trustee may donate such balance to a charitable organization exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code as provided hereunder unrelated to any of the Debtors, the Creditor Trust, and the Creditor Trustee.

      6.4    <u>Report of Distribution</u>. After all Claims have been reconciled, administered and resolved, and all Distributions have been made pursuant to the terms of this Agreement, the Creditor Trustee shall provide the Beneficiaries a report of all Distributions, which shall list the amount distributed to each Beneficiary and the amount of any remaining, but unpaid, Allowed Claims of Beneficiaries.

      6.5    <u>Claims Filed After Entry of the Order</u>. Any General Unsecured Claim filed or allowed after the entry of the Structured Dismissal Order is deemed disallowed and expunged without any action on the part of the Creditor Trustee.

      6.6    <u>Effect of the Order</u>. The Order shall be a final determination as to the rights of all Holders to receive or participate in the Distributions under this Agreement, whether or not (a) a Proof of Claim has been filed or deemed filed under the Bankruptcy Code or (b) such Claim is Allowed.

      6.7    <u>Claims Allowed as of the Initial Distribution Date</u>. Except as otherwise provided in this Agreement, the Creditor Trustee shall make a Distribution on the Initial Distribution Date to all Beneficiaries of the Creditor Trust by virtue of such Holder holding Allowed Claims and being entitled to receive Distributions under this Agreement as a Beneficiary.

6.8     Undeliverable Distributions.

6.8.1   Holding of Undeliverable Distributions.  If any Distribution to any Beneficiary is returned to the Creditor Trustee as undeliverable, no further Distributions shall be made to such Beneficiary unless and until the Creditor Trustee is notified, in writing, of such Beneficiaries then-current address, at which time all missed Distributions, to the extent provided under this Article, shall be made to such Beneficiary without interest.  Subject to Section 6.8.2 below, undeliverable Distributions shall remain in the possession of the Creditor Trustee until such time as the Creditor Trustee makes a subsequent Distribution.  Nothing contained in this Agreement shall require the Creditor Trustee to attempt to locate any Holder of an Allowed Claim.

6.8.2   Failure to Claim Undeliverable Distributions:  Any Beneficiary that does not assert its rights pursuant to this Agreement to receive a Distribution within sixty (60) days from and after the filing of such list shall have its Claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such Claim.  In such case, all unclaimed Distributions shall revert to the Creditor Trustee and be applied in accordance with the terms of this Agreement.

6.9     Compliance with Tax Requirements.  To the extent applicable, the Creditor Trustee in making Distributions in accordance with this Agreement shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions shall be subject to such withholding and reporting requirements.  The Creditor Trustee may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such holder provides to the Creditor Trustee the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Creditor Trustee to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the Creditor Trustee with the information necessary to comply with any withholding requirement of any governmental unit within sixty (60) days after the date of first notification by the Creditor Trustee to the Holder of the need for such information, then the Holder shall lose the right to receive a Distribution.  The Creditor Trustee may be required to identify, by tax identification number, each Holder of an Allowed Claim that receives a Distribution.  To ensure that the Creditor Trustee has a tax identification number for each Holder of an Allowed Claim, such Holders will be sent a Form W-9 (or may download one at www.irs.com).  The Holders must return the completed and signed Form W-9 to the Creditor Trustee at the following address, postage pre-paid:

Distributed Creditor Trust
c/o Arent Fox LLP
Leah M. Eisenberg, Esq.
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Attn: Tax Identification – Distributed Creditor Trust

If a Holder does not return the completed Form W-9 to the Creditor Trustee, the Creditor Trustee is allowed to retain Distributions to Allowed, and such failure to provide the completed Form W-

9 Form within a reasonable time can result in the Holder losing the right to receive a Distribution. In addition, the Debtors shall be required to provide to the Creditor Trustee any and all tax related information, including, but not limited to, the tax identification numbers of the General Unsecured Creditors that Debtors have in their possession.

6.10    Mailing of Distributions.  All Distributions shall be made to the Holders of Allowed Claims at the address listed on their respective proofs of claim filed with the Court or Claims Agent or, if no proof of claim was filed, addresses listed by the Debtor on the Schedules or at its last address known to the Debtor.  The Creditor Trustee shall not be required to ascertain the current address of the Holder of any Allowed Claims whose Distribution is returned as undeliverable by the United States Postal Service as provided in Section 6.8 above.

## ARTICLE 7

## REMOVAL OR RESIGNATION OF CREDITOR TRUSTEE

7.1    Removal of Creditor Trustee.  The Creditor Trustee appointed pursuant to this Agreement may be removed for cause upon order of a Court after notice and opportunity for a hearing.  If a Creditor Trustee is removed for cause, such Creditor Trustee shall not be entitled to any accrued but unpaid fees, reimbursements or other compensation under this Agreement or otherwise.  For purposes of this Agreement, the term "cause" shall mean (i) the Creditor Trustee's gross negligence, bad faith, willful misconduct or willful failure to perform its duties under the Order and this Agreement or (ii) the Creditor Trustee's misappropriation or embezzlement of any Trust Assets or the proceeds thereof.  If the Creditor Trustee is removed by a Court other than for cause, or is unwilling or unable to serve (x) by virtue of its inability to perform its duties under this Agreement due to death, illness, or other physical or mental disability, (y) following the liquidation of all or substantially all of the Trust Assets, or (z) for any other reason whatsoever other than for "cause," subject to a final accounting, the Creditor Trustee shall be entitled to all accrued and unpaid fees, reimbursement, and other compensation, to the extent incurred or arising or relating to events occurring before such removal, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Creditor Trustee.

7.2    Resignation of Creditor Trustee.  The Creditor Trustee may resign upon notice to Beneficiaries which resignation shall become effective thirty (30) days after the mailing of such notice to the Beneficiaries or contemporaneous with the appointment of a successor Creditor Trustee.  If the Creditor Trustee resigns from its position hereunder, subject to a final accounting, it shall be entitled to all accrued unpaid fees, reimbursement, and other compensation to the extent incurred or arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Creditor Trustee.

7.3    Successor Creditor Trustee.  In the event that the Creditor Trustee is removed, resigns, or otherwise ceases to serve as Creditor Trustee, unless the Creditor Trustee is removed for "cause," a successor Creditor Trustee shall be appointed by a majority of the Beneficiaries or by the Court.

# ARTICLE 8

## EFFECT OF AGREEMENT ON THIRD PARTIES

There is no obligation on the part of any person dealing with the Creditor Trustee, or any agent, servant or Professional, to see to the application of the money or other consideration paid or delivered to the Creditor Trustee, or any agent of the Creditor Trustee, or to inquire into the validity, expediency, or propriety of any such transaction, or the authority of the Creditor Trustee, or any agent of the Creditor Trustee, to enter into or consummate the same, except upon such terms as the Creditor Trustee may deem advisable.

# ARTICLE 9

## WAIVER

No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

# ARTICLE 10

## TERMINATION OF AGREEMENT AND AMENDMENT

10.1 <u>Termination of Agreement</u>. This Agreement (other than Section 4.10, 4.14, 4.16 and related provisions) shall terminate and the Creditor Trust shall dissolve and terminate and be of no further force or effect upon the earlier to occur of (i) the final Distribution of all monies and other Trust Assets in accordance with the terms of this Agreement and the Order and (ii) entry of a Final Order of the Court terminating and dissolving the Creditor Trust as provided under this Agreement. The Creditor Trust will terminate no later than the fifth (5th) anniversary of the Effective Date. The Creditor Trustee will not unduly prolong the duration of the Creditor Trust and will at all times endeavor to resolve, settle or otherwise dispose of all Claims and the Trust Assets, to effect Distributions to Beneficiaries in accordance with the terms hereof and to terminate the Creditor Trust as soon as practicable in a prompt and timely fashion.

10.2 <u>Amendment of Agreement</u>. Except as otherwise set forth herein, any provisions of this Agreement may be amended, modified, terminated, revoked, or altered only in writing by the Creditor Trustee and a majority of the Beneficiaries. Notwithstanding the foregoing, technical nonmaterial amendments to this Agreement may be made, as necessary to clarify this Agreement or to enable the Creditor Trustee to effectuate the terms of this Agreement, by the Creditor Trustee, without Beneficiary or Court approval. Notwithstanding this Section 10.2, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Creditor Trust to liquidate in an expeditious but orderly manner the Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d) and Articles II and III hereof.

# ARTICLE 11

## MISCELLANEOUS

11.1 <u>Intention of Parties to Establish the Creditor Trust</u>. This Agreement is not intended to create, and shall not be interpreted as creating, an association, partnership or joint venture of any kind. It is intended as a trust to be governed and construed in all respects as a trust.

11.2 <u>Filing Documents</u>. A copy of this Agreement and all amendments thereof shall be maintained in an office or residence of the Creditor Trustee and shall be available for inspection.

11.3 <u>Tax Identification Numbers</u>. The Creditor Trustee may require any Beneficiary to furnish to the Creditor Trustee, (i) its employer or taxpayer identification number as assigned by the Internal Revenue Service, and (ii) such other information, records or documents necessary to satisfy the Creditor Trustee's tax reporting obligations (including certificates of non-foreign status). The Creditor Trustee may condition the payment of any Distribution to any Beneficiary upon receipt of such identification number and requested documents.

11.4 <u>Privilege</u>. The attorney-client privilege, work product doctrine or other privileges or immunities inuring to the benefit of the Debtors and the Committee or attaching to documents or communications of the Debtors and the Committee shall be transferred to the Creditor Trust. The Creditor Trustee is authorized to assert or waive any such privilege or doctrine, as necessary or appropriate for the administration of the Creditor Trust, provided that, to the extent any such privilege or doctrine is waived in connection with information requested of any Professional previously employed by the Debtors and the Committee, the Creditor Trustee agrees that such information request shall be made solely for the purpose of carrying out the Creditor Trustee's duties hereunder, that the Creditor Trustee shall act in good faith and shall use their best efforts to tailor as narrowly as possible any request so as not to be unduly invasive or burdensome to the Professional upon whom the request is made.

11.5 <u>Governing Law</u>. THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

11.6 <u>Severability</u>. If any one or more of the provisions herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision in every other respect, and of the remaining provisions, shall not be in any way impaired or affected. In such event, there shall be added as part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable. The effective date of the added provision shall be the date upon which the prior provision was held to be invalid, illegal or unenforceable.

11.7 _Entire Agreement_. This Agreement (including the recitals and any schedules hereto), and the Order constitute the entire agreement of the parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Agreement and the Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. In the event of any inconsistency between this Agreement and the Order, the Order shall govern; provided, however, that the Creditor Trustee may amend, modify and/or correct the terms hereof to supersede the Order, with the approval and consent of the Court. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

11.8 _Jurisdiction; Venue, Etc_. Each party hereto irrevocably agrees that any suit, action or proceeding with respect to this Agreement shall be brought in the United States District Court, Districts of New York or New Jersey, and by execution and delivery of this Agreement, each party (i) irrevocably submits to each such jurisdiction and venue, (ii) waives, to the fullest extent permitted by law, any objection that it may have to the laying of the venue of any such suit, action or proceeding brought in such court has been brought in an inconvenient forum, and (iii) agrees that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding upon it and may be enforced in any court to the jurisdiction of which such party is subject by a suit upon such judgment, provided that service of process is effected as otherwise permitted by law.

11.9 _Notices_. Unless otherwise expressly specified or permitted by the terms hereof, any notice, request, submission, instruction or other document to be given hereunder by a party shall be in writing and shall be deemed to have been given, (i) when received if given in person, (ii) upon delivery, if delivered by a nationally known commercial courier service providing next day delivery service (such as Federal Express), or (iii) upon delivery, or refusal of delivery, if deposited in the U.S. mail, certified or registered mail, return receipt requested, postage prepaid:

If to the Creditor Trustee, addressed as follows:

J.H. Cohn LLP
Clifford Zucker
333 Thornall Street, 6 th fl Edison, NJ 08837

With a copy to:

Arent Fox LLP
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Attn: Leah M. Eisenberg, Esq.

or to such other individual or address as a party hereto may designate for itself by notice given as herein provided.

11.10 <u>WAIVER OF JURY TRIAL</u>. EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED THEREBY.

11.11 <u>Further Assurances</u>. Each party hereto (and its respective agents, successors and assigns) shall, upon the Creditor Trustee's reasonable request, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such further instruments, and do or cause to be done, such further acts, as may be necessary to carry out the purposes of this Agreement and to vest in the Creditor Trustee the powers and duties contemplated hereunder.

11.12 <u>Exculpatory Provisions and Survival Thereof</u>. Whether or not expressly therein so provided, any and all exculpatory provisions, immunities and indemnities, and any limitations and negations of liability contained in this Agreement, in each case inuring to the benefit of the Creditor Trustee, shall survive (i) the termination or revocation of this Agreement, and (ii) as to any person who has served as Creditor Trustee, the resignation or removal of such person as Creditor Trustee.

11.13 <u>Headings</u>. The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.14 <u>Successors and Assigns</u>. All covenants and agreements contained herein shall, as applicable, be binding upon, and inure to the benefit of the Committee, the Debtors, the Creditor Trustee and its successors, all as herein provided.

11.15 <u>Separate Counterparts</u>. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

[signature page follows]

IN WITNESS WHEREOF, the undersigned have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

CREDITOR TRUSTEE:

By: _____

Name: Clifford Zucker
Title: Creditor Trustee


THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
DISTRIBUTED ENERGY SYSTEMS CORP.
AND NPS LIQUIDATING, INC.

By: _____

Name: Andrew I. Silfen
        Leah M. Eisenberg
        Heike M. Vogel
Title: Counsel of the Official
        Committee of Unsecured
        Creditors of Distributed Energy
        Systems Corp. and NPS Liquidating,
        Inc.